A. A. MURPHY, INC., a foreign corporation, dba Murphy Finance Co., Plaintiff in Error,

v.

Frank BANFIELD, dba Banfield Sales, Vinson A. Bogard and Hazel M. Bogard, Defendants in Error.

No. 39023.

Supreme Court of Oklahoma.

July 25, 1961.

Boatman, Pugsley & Boatman, Okmulgee, for plaintiff in error.

Smith, Inglish & Gray, Okmulgee, for defendants in error.

BERRY, Justice.

The agents of Frank Banfield, dba Banfield Sales, approached Mr. and Mrs. Bogard in an effort to solicit their participation in an "economy food plan". The selling point, as outlined by the agents, was that Banfield could substantially reduce Bogards' living expenses by undertaking to supply, at wholesale prices, their usual household needs for meats and vegetables over a period of two years. For the storage of these provisions which were to be frozen and delivered in sizeable lots, Banfield offered to sell Bogards a freezer unit on a time basis. Banfield represented that the difference between the cost of the food computed at retail and the price Banfield proposed to charge therefor would accomplish a saving sufficient in amount to in effect pay the installments on the freezer box; that during the term of this "plan", Bogards were told, they could thus acquire the freezer without ever increasing their existing cost of living. In reliance on these representations Bogards agreed to join the "plan" and were induced to execute two blank notes and a chattel mortgage. One of the notes was to cover the supplies of frozen food; the other, to be secured by a chattel mortgage on the freezer, was to represent the purchase price of that appliance. The instruments, as outlined, were transferred by Banfield to A. A. Murphy Finance Company. When Bogards refused to make payments on either note, the finance company instituted this action against Bogards and Banfield to recover on the two notes and to foreclose the chattel mortgage on the freezer. A trial by jury resulted in a verdict for Bogards and judgment was entered in their favor. Murphy Finance Company has perfected this appeal after the lower court overruled its motion for a new trial. The record discloses that Banfield was never served with summons, filed no pleadings in the trial court, and is not a party to this appeal. Our reference to the parties before us will be by their designation below.

As reflected by the pleadings and the evidence adduced at the trial, defendants admitted the execution of, and default on, the notes and did not dispute the amount due thereon. They attempted to avoid the binding effect of the entire obligation on the ground of Banfield's fraud in its procurement and failure of consideration. Defendants charged the plaintiff (as transferee of the notes) with actual or imputed notice of defects and infirmities in Banfield's title to the notes. The freezer unit, to which defendants asserted no claim, was tendered to the plaintiff. While defendants did not dispute liability for "reasonable value" of the food received by them under the "plan", they sought, on the grounds as noted, restitution of their own refrigerator (taken by Banfield as a "trade-in" on the freezer unit) and cancellation of all instruments forming the basis of the action.

At the outset we are called upon to ascertain the character of the instant action, that is, whether one at law or in equity. The method governing our review will necessarily depend on this determination. Flowers v. Stanley, Okl., 316 P.2d 840, 846; Jones v. Goldberger, Okl., 323 P.2d 344. In an action at law this Court will not reverse a judgment if there is any competent evidence reasonably tending to support the verdict of the jury and the record is otherwise free from prejudicial errors of law. In a suit of equitable cognizance, this Court will examine the entire record and weigh the evidence, but unless the decree of the lower court is found to be clearly against the weight of the evidence or contrary to established principles of equity jurisprudence, it will not be disturbed on appeal. Cox v. Sarkeys, Okl., 304 P.2d 979; Frank Harber Buick, Inc. v. Miller, Okl., 328 P.2d 716; McKenna v. Lasswell, 207 Okl. 408, 250 P.2d 208.

A party who has been induced by fraud to enter into a contract for the purchase of personal property has, upon discovery of fraud, a choice of two remedies: rescission or affirmance. If he seeks to rescind the contract, he must comply with the statute by offering to return, or by restoring everything of value which he has received under the contract. Should he elect to affirm the contract and seek to recover damages, the measure of damages is the difference between the actual value of the property as delivered and the value it would have had if it had been as represented. The purchaser must elect between these alternative remedies and may not both affirm and avoid the obligation. 23 O.S. 1951 § 34; 15 O.S.1951 § 233; Doughty v. Laubach, 172 Okl. 42, 44 P.2d 105; Stafford v. McDougal, 171 Okl. 106, 42 P.2d 520; Ivey v. Stewart, Okl., 295 P.2d 1056.

In an action for recovery upon a negotiable promissory note, if the defendant admits the execution of the note and the amount due thereon, and by answer and counterclaim tenders the consideration received, seeks to void (rescind) and cancel the contract, pursuant to which the note was given, on the ground of fraud, and prays restitution from plaintiff of money (or property) previously parted with under such contract, the answer and counterclaim so framed transforms the character of the cause into one of equitable cognizance. Stafford v. McDougal, supra; Moore v. Stanton, 77 Okl. 41, 186 P. 466; Mathews v. Sniggs, 75 Okl. 108, 182 P. 703. See also Dean v. McMichael, 168 Okl. 536, 33 P.2d 1086; Chiles v. De Lana, 187 Okl. 415, 103 P.2d 63.

Although defendants' answer and cross-petition did in some minor aspects depart from the theory of rescission, the evidence introduced by them at the trial (without objection on the part of the plaintiff) unmistakably shows that they elected to and did pursue the remedy of avoidance and cancellation. Under this state of the record, the pleadings must be regarded to have been amended so as to conform to the proof. Liberty Plan Co. v. Francis T. Smith Lumber Co., Okl., 360 P.2d 500. We are of the opinion that defendants' equitable counterclaim for rescission and cancellation transformed the instant action into one of equitable cognizance. Stafford v. McDougal, supra.

We next pass to examine the evidence. Our attention is first drawn to the question of plaintiff's claim to the status of a holder in due course. If its contention is correct and may be sustained, then the defense of rescission on ground of fraud did not avail to the defendants.

There is evidence of outstanding strength, with little if any contradiction, that before acquiring the notes and mortgage in question, plaintiff's agent (whose authority is undisputed) telephoned the defendants and learned in course of the conversation that defendants had purchased a new Markett freezer-refrigerator combination box, but Banfield delivered a used unit of a different make (Jordan). It is a time-honored principle of law that notice to the agent constitutes notice to the principal unless the circumstances are such as to raise a clear presumption that he will not, though in duty bound, communicate his knowledge to the latter. First State Bank of Keota v. Bridges, 39 Okl. 355, 135 P. 378. The facts here do not bring this case into the stated exception. The conclusion is inevitable that plaintiff, prior to acquisition of the commercial paper in question, did have knowledge of defect and infirmity in Banfield's title. Under the statute, 48 O.S.1951 § 129, the transferee of a negotiable instrument is entitled to a rebuttable presumption that he is the holder in due course. But when it is shown that his title was defective, the burden devolves on the transferee to prove that he or his transferor acquired the instrument as a holder in due course within the meaning of 48 O.S.1951 § 122. This statutory rule has no application when the transferee became bound on the instrument prior to

the acquisition of the defective title. 48 O.S.1951 § 129. Inasmuch as in the present case the evidence showed fraud in the procurement of the note by Banfield and plaintiff's actual knowledge of failure of consideration prior to purchase of the paper, the statutory exception was not brought into action. Instead, the general rule shifting the burden upon one claiming to be the holder in due course governed. Lambert v. Smith, 53 Okl. 606, 157 P. 909, 18 A.L.R. 1; Gourley v. Pioneer Loan Co., 51 Okl. 434, 151 P. 1072; Daniels v. Bunch, 69 Okl. 113, 172 P. 1086.

Actual knowledge of failure of consideration constitutes notice of infirmity and is fatal to the claim of a holder in due course. 48 O.S.1951 § 126. Plaintiff did not produce any evidence to overcome defendants' proof of actual notice and thus failed to establish that he was a holder in due course. See Lambert v. Smith, supra; Keisel v. Baldock, 55 Okl. 487, 154 P. 1194, L.R.A.1916D, 632.

Since plaintiff is not a holder in due course, the provisions of 48 O.S.1951 § 127, are applicable, and defendant buyers could interpose as against it all defenses available between themselves and the payee (Banfield). 48 O.S.1951 § 75; 12 O.S.1951 § 222; 12 O.S.1951 § 278; Mercantile Trust Co. v. Roland, 143 Okl. 190, 288 P. 300.

■ Apart from failure of consideration, defendants' principal reliance for rescission was placed upon fraud in the procurement of the notes and mortgage. The evidence in support of this issue is likewise undisputed. Banfield's agents (whose authority was not denied) represented that a new Markett refrigerator-freezer combination unit would be delivered; that defendants would be credited in the sum of $75 for their old refrigerator and would pay 24 monthly installments of $59.35 each. Of this sum, $45 per month was to be applied on the purchase of meats and frozen products at wholesale or reduced prices; the balance of $14.35 per month was to represent an installment payment on the price of the freezer. The agent represented that the savings defendants would realize from the monthly deliveries of food at low prices would enable them to purchase the refrigerator-freezer unit without any increase in their household budget. The monthly installments of $59.35 were to be equally divided and one-half thereof was to be payable twice a month. Defendants were to execute two notes (each for 24 monthly installments of one-half of $59.35) and a chattel mortgage upon the new combination box. The notes and mortgage forms were signed in blank as the agent represented that the instruments would be filled in with a typewriter "back at the office". No copies of these instruments were left with defendants. The agent stated that defendants would receive as a bonus a G. E. coffeemaker along with an electric deep fryer if they signed "immediately there". Later, a secondhand freezer box of a different make was delivered. When one of Banfield's agents returned the next day, he apologized for the mistake and assured defendants the right unit would be furnished. Plaintiff never did deliver the right unit. Defendants did not know the terms of the note until they checked the chattel mortgage on file and received a statement of payments from plaintiff finance company. They promptly repudiated the contract. While one delivery of food was received, the circumstances of its delivery do not amount to an affirmance by conscious acceptance of benefit. There is undisputed testimony that Mrs. Bogard was prevailed upon (by Banfield's agent) to accept the initial delivery of frozen products on the pretense that they would spoil if not immediately placed in the freezer. This conduct, as we view it, was not incompatible with, nor did it preclude equitable rescission. Frickenschmidt v. Garner, 174 Okl. 559, 51 P.2d 537; Davis v. Gwaltney, Okl., 291 P.2d 820.

■ The notes and mortgage were admittedly completed by Banfield. One of the

notes (secured by mortgage on the freezer) was for $910.80, payable in 24 installments of $37.95 each; the other, covering only food, was in the sum of $128.40, payable in 6 installments of $21.40 each.

Defendants testified that the purpose of the contract, pursuant to which they executed the instruments, was to acquire a freezer with a savings realized from the monthly allowance of $45 worth of food, at wholesale prices, over a period of 24 months. But for these representations defendants would not have signed the notes. Thus, the uncontroverted misrepresentation of the terms to be inserted in the notes defeated and destroyed the entire object of the transaction.

■ The evidence so adduced was clearly admissible. It is hornbook law that parol evidence rule does not apply where liability on a written instrument is sought to be avoided on grounds of fraud. When false and fraudulent representations were made to induce the execution of a contract, parol evidence is admissible to establish fraud and vitiate the contract. Superior Distributing Corp. v. Hargrove, Okl., 312 P.2d 893. We find the undenied proof in the instant cause clear and convincing to establish that the instruments in litigation were procured by Banfield through false and fraudulent representations with respect to the nature of the contract and the terms to be contained in the notes. These instruments, when signed and procured by Banfield's agents, were left incomplete at their insistence. The authorities cited by plaintiff are inapplicable. They deal with fact situations where the contract was, at the time of its execution, complete and unambiguous in its provisions, and defendants who were capable of reading, sought its cancellation on the ground that the terms, as stated therein, were contrary to prior oral representations.

In Stapleton v. Holt, 207 Okl. 443, 250 P.2d 451, 452, it is held:

"Fraud is a generic term which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated."

■ In an action on a promissory note by one who is not a holder in due course, both fraud in the procurement of the note and absence or failure of consideration are valid defenses. Planters Trading Co. v. Golden Grocery Co., 139 Okl. 246, 281 P. 771; Harvey v. Thomas, 150 Okl. 106, 300 P. 772; Frank Harber Buick, Inc. v. Miller, Okl., 328 P.2d 716; Strickland v. Hetherington, Okl., 353 P.2d 138; Hawkins v. McElhanon, Okl., 315 P.2d 667; Selected Investments Corporation v. Lester, Okl., 327 P.2d 668.

Under the evidence as outlined, the defendants were entitled to a decree for rescission and cancellation of the entire obligation and the jury did, in effect, declare a rescission. Their verdict finds generally for the defendants on plaintiff's petition (for recovery on the notes), and pronounces likewise in their favor on the cross-petition (for the value of their refrigerator), but affirmatively disallows them any recovery. It would appear that the jury determined the fair market value of defendants' refrigerator to be equal to the reasonable value of the food received by them from Banfield, and the two amounts were offset each against the other. The uncontradicted evidence does disclose that defendants' refrigerator was worth between $125 and $150, and the sum of $128.40 was shown, without dispute, to represent a reasonable price for the food.

■ Although it does not affirmatively appear that the trial judge treated the verdict as merely advisory and rendered judgment upon his own findings and opinion, as

he should have done, there is no showing here of any objection from or prejudice to the plaintiff. The error so made, we have held, will not require a reversal unless an examination of the entire record discloses that a miscarriage of justice has probably resulted therefrom or there was a violation of statutory or constitutional rights. Millus v. Lowrey Bros., 63 Okl. 261, 164 P. 663, L.R.A.1918B, 336. We find no prejudicial error under the facts in the instant case.

■ In the remaining propositions of its brief, plaintiff complains of improper instructions to the jury. It is unnecessary for us to consider the question so raised. In an action of equitable cognizance, error may not be predicated upon instructions given or refused by the trial court. Costello et al. v. Sims et al., 106 Okl. 94, 233 P. 449; American National Bank of Oklahoma City v. Jorden, 123 Okl. 151, 254 P. 706; Town of Jennings v. Pappenfuss, 129 Okl. 85, 263 P. 456; Jenkins v. Abercrombie, 204 Okl. 213, 228 P.2d 657.

■ The judgment as rendered failed to dispose of an incidental issue which was not submitted to the jury. Defendants, who in course of the trial offered to restore the freezer to the plaintiff, should have been required to keep and make their tender good. The judgment should therefore be modified to provide that defendants surrender to plaintiff the Jordan freezer box within 10 days from the date the mandate herein reaches the trial court.

In their answer brief, defendants present a re-argument of their motion to dismiss and rely upon grounds previously urged. The motion has heretofore been denied and we adhere to our previous ruling thereon. Kay County Gas Co. v. Bryant, 135 Okl. 135, 276 P. 218; Embry v. Villines, 175 Okl. 552, 53 P.2d 277.

Judgment as modified affirmed.

WILLIAMS, C. J., and WELCH, DAVISON, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.